## UNITED STATES

v.

**Robert Lee PUCKETT, 410 94 3902 Seaman Recruit (E-1) U. S. Naval Reserve.**

**NCM 76 0158.**

U. S. Navy Court of Military Review.

Sentence Adjudged 15 Jan. 1975.

Decided 27 Feb. 1976.

Before WRAY, III, LAPPIN and FULTON, JJ.

---

3. Robbery is larceny coupled with an assault. *United States v. Johnson, supra.*

## DECISION

LAPPIN, Judge:

On 15 January 1975 the appellant was tried by a special court-martial, military judge sitting alone, and, pursuant to his pleas, convicted of five periods of unauthorized absence; two counts of missing movement and three counts of failure to muster with restricted men in violation of the Uniform Code of Military Justice, Articles 86, 87 and 92, 10 U.S.C. §§ 886, 887, 892, respectively. The appellant was sentenced to confinement at hard labor for a period of four months, "forfeiture of $200.00 for four months" and a bad conduct discharge.

On 16 April 1975, ninety-one days later, the convening authority acted in accordance with the recommendation of the trial judge by approving the sentence, but suspending the bad conduct discharge. The appellant was in post-trial confinement throughout this ninety-one day period.

On 7 March 1975 appellant indicated that he did not desire representation by appellant defense counsel before this Court and thus the record comes to us without assignment of error. However the simple facts set forth above indicate the Government's case against appellant is in shoal waters for having violated the ninety-day post-trial review mandate set forth in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). In *Dunlap, supra,* the Court held that when the accused is under restraint after trial, "a presumption" will arise that he was denied a speedy disposition of his case, if the convening authority "does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial." Thereafter, if the Government fails to meet the "heavy burden" of overcoming the presumption, the conviction will fail, and the charges will be dismissed.

The record and its allied papers disclose that trial counsel was fully aware of the burden placed upon the Government by *Dunlap,* and as a result, he attached to the record of trial affidavits by the court reporter, trial and defense counsel, and the military judge setting forth their actions on the record of trial in an attempt to comply with the "ninety-day rule." The trial counsel is to be commended for attaching the affidavits *sua sponte* and thus avoiding the possible further delay in the disposition of the case *sub judice.* The staff judge advocate fully analyzed the problem in his review for the supervisory authority, but under the present status of the law we are required to disagree with his conclusion "that the affidavits provide the showing of diligence to overcome 'really extraordinary circumstances' in this case . . . to avoid dismissal of the charges. . . ."

It is obvious from the affidavits that all personnel involved with the preparation and authentication of the record made a sincere effort, under trying circumstances, to accomplish a "speedy review" within the guidelines provided by *Dunlap.* It appears that the day after the trial, on 16 January 1975, the court reporter discovered the primary recording system contained large gaps and the back up system had totally failed to record. It was thus necessary to reconstruct large portions of the trial, mostly pertaining to counsels' argument. The court reporter, trial and defense counsel and military judge were all acting under an unusually heavy case load during this period. The trial defense counsel had the record of trial during its preparation for approximately 26 days. However, this time must be charged to the Government, because defense counsel was acting at the Government's request in an attempt to reconstruct a verbatim record. Without covering their efforts in detail, suffice it to say that the trial counsel delivered the completed and authenticated record to a representative of the convening authority on 11 April 1975, 86 days after trial, with the caveat "that it was necessary that the convening authority's action in the case be done by Tuesday the 15th of April 1975." (Appellate Exhibit 2, P. 2). As mentioned before the convening authority took his action, mitigating the sentence on 16 April 1975. The record and its allied papers do not indicate what transpired between 11–16 April 1975.

The Court of Military Appeals, in the recent case of *United States v. Larsen*, 23 U.S.C.M.A. 564, 50 C.M.R. 783, 1 M.J. 300 (1975) has applied the same guidelines for determining if there has been a speedy post-trial review as they have applied to speedy trial, when the appellant is in confinement, by citing *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973) and *United States v. Stevenson*, 22 U.S.C.M.A. 454, 47 C.M.R. 495 (1973). *Marshall, supra*, stands for the proposition that where a presumption of an Article 10 violation arises by reason of 3 months' pretrial confinement, the government must demonstrate that really extraordinary circumstances beyond such normal problems as mistakes in drafting, manpower shortages, illnesses, and leaves contributed to the delay. Operational demands, a combat environment, or a convoluted offense are examples that might justify a departure from the norm. Absent these or similar circumstances, the delay beyond 90 days cannot be justified by a showing that it was caused by difficulties usually encountered in the processing of charges for trial.

The case *sub judice* involves guilty pleas and findings to comparatively simple charges and a 65-page record of trial. We find that all personnel concerned acted in good faith and with diligence, however an electronics failure, extremely heavy case load and an unexplained period of time between 11–16 April 1975 leads us to find a failure to give the appellant a speedy review of his case.

Accordingly, the findings and sentence are set aside and the charges and specifications are dismissed.

FULTON, Judge (concurring):

I concur.

I am unable to make the fine distinctions my brother Wray makes between the 90-day *Burton* rule and the 90-day *Dunlap* rule. Also, it seems clear to me that *Goode* provides for waiver of errors in the written staff judge advocate's review and does not provide for waiver of substantive errors occurring outside the review.[1] If errors outside the review are waived, then the failure to respond in five days takes on added dimensions. We would rarely have to go beyond such waiver in our review of a case. I doubt that the Court of Military Appeals intended such an expansion of the waiver doctrine. *Cf. United States v. Heflin*, 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975).

The 91 days that it took for the convening authority to take his action had long since passed when this staff judge advocate wrote his review for the supervisory authority. The clock cannot now be unwound.

WRAY, Judge (dissenting):

Although the convening authority did not take the action required by Article 60, Uniform Code of Military Justice within the 90-day time limit established by *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1976), I conclude the accused is entitled to no relief. I therefore reach a conclusion contrary to that of the majority.

In a partially contested special court-martial trial to a military judge, the accused was found guilty of five unauthorized absence offenses under Charge I in violation of Article 86, U.C.M.J.; two offenses of neglectfully missing the movement of his ship under Charge II in violation of Article 87, U.C.M.J.; and three offenses of violating a lawful order by failing to muster with restricted men under Charge III in violation of Article 92, U.C.M.J.

On 15 January 1975 the judge sentenced the accused to a bad conduct discharge, four months' confinement at hard labor, and forfeiture of $200.00 for four months. He also recommended suspension of the discharge for a period of six months from that date.

On 2 April 1975 the trial defense counsel submitted a clemency petition on behalf of his client, requesting that both the punitive discharge and one month of the confinement be suspended.

The convening authority took his action two weeks later on 16 April 1975. He was

---

1. *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

mindful of the recommendation of the judge and the contents of the clemency petition; although he approved the sentence adjudged, he then suspended the remaining confinement and the discharge for a period of six months from 15 January 1975 with provision for automatic remission. On 18 November 1975, after receiving the trial record and the 11 November 1975 post-trial written review of his staff judge advocate, the supervisory authority approved the sentencing action of the convening authority.[1]

The accused was placed in confinement on 15 January 1975 after the trial terminated late that afternoon. He remained incarcerated from then until 16 April 1975 when the convening authority took his action and the remaining confinement was suspended. The accused was therefore confined for 91 days after trial, *United States v. Stone*, No. 75, 2725, 2 M.J. 1187 (N.C.M.R. 31 December 1975), until the convening authority acted. Although this was one more day than ordinarily allowed by the 90-day post-trial rule of *Dunlap*, the rule is not without some elasticity.

In formulating its *Dunlap* rule, the United States Court of Military Appeals relied heavily upon the speedy trial rule which established the presumption of denial of speedy trial " . . . when pretrial confinement exceeds three months." *United States v. Burton*, 21 U.S.C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971). In *Dunlap* moreover, the Court first paraphrased the *Burton* speedy trial rule and then quoted from the *Burton* opinion in articulating its speedy post-trial review rule:

"To paraphrase *Burton*, . . ., a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint [arrest or confinement] after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial. *In the language of Burton*, 'this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges *should* be dismissed.' *Id.* See also *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973); *cf. United States v. Johnson*, 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974)." 23 U.S.C.M.A. at 138, 48 C.M.R. at 754. [Emphasis supplied.]

The *Burton* speedy trial rule, given full implementation in *United States v. Marshall, supra*, and modified from three months to *Dunlap's* 90 days in *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1975), imposes a strict speedy trial standard within the military justice system. The Court's *Burton* offspring, *Dunlap*, imposes an identical standard of strictness in the post-trial process when an accused is under restraint. *United States v. Driver, supra*, 23 U.S.C.M.A. at 246, 49 C.M.R. at 379.

Both the *Burton* 90-day pretrial rule and the post-trial 90-day rule of *Dunlap* have the identical objective of stimulating rapid motion. The former is designed to bring an accused to trial without undue delay and the latter is designed to cause the convening authority to act on the trial record with alacrity.

1. In taking his action and approving, *inter alia*, the adjudged forfeiture of $200.00 per month for four months, the convening authority did not prorate the lump sum of $200.00 into monthly amounts over the four month period. Rather, he directed application of the forfeiture to pay becoming due on and after the date of his action. This was permissible. *United States v. Rios*, 15 U.S.C.M.A. 116, 35 C.M.R. 88 (1964).

Nevertheless, since the convening authority did not expressly state in his action that the forfeiture was limited to a total amount of $200.00, it is not unlikely that translation of the adjudged forfeiture from the trial record proper to the accused's pay account may have become garbled along the way into a forfeiture of $200.00 *per month* for a number of months as it did in the post-trial review of the staff judge advocate.

Accordingly, where the forfeiture element of the approved sentence should clearly state the total forfeiture amount and thereby operate to correct any forfeiture injustice the accused may have suffered. *United States v. Johnson*, 13 U.S.C.M.A. 127, 32 C.M.R. 127 (1962).

Rights flowing to an accused have been created by each of these two rules and concomitantly each rule has imposed obligations upon Government officials. Pursuant to *Burton* an accused restrained before trial usually has the right to trial within 90 days and the Government has the obligation to bring him to trial within that period or suffer the consequence of dismissal of the charges. *United States v. Marshall, supra; United States v. Burton, supra. Also see United States v. Wolzok,* 23 U.S.C.M.A. 564, 50 C.M.R. 783, 1 M.J. 125 (1975); *United States v. Driver, supra.* Similarly, after trial, an accused who is restrained usually has the right to have his case disposed of by the convening authority within 90 days [2] or, pursuant to *Dunlap,* the charges should be dismissed. *United States v. Larsen,* 23 U.S.C.M.A. 564, 50 C.M.R. 783, 1 M.J. 300 (1975). *Cf. Webb v. United States,* 23 U.S.C.M.A. 420, 50 C.M.R. 324, 1 M.J. 40 (1975).

Notwithstanding these substantial and meaningful identities between *Burton's* pretrial rule and its progeny, the post-trial rule of *Dunlap,* there are also differences between the two rules.

The *Burton* rule rests upon Article 10, U.C.M.J., which states that when an accused " . . . is placed in arrest or confinement prior to trial, immediate steps shall be taken to . . . try him . .." Article 10 expresses the desire of Congress that a serviceman-accused be afforded a speedy trial, a right of fundamental importance, retained by the citizenry of our Nation for the benefit of accused and given prominent recognition in our Constitution. *See* Sixth Amendment; *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The Constitution does not, however, expressly state that a right to a speedy review exists,[3] nor did Congress find it necessary in enacting or amending the U.C.M.J. to provide statutory protection to such a right as it did in protecting the right to speedy trial by the enactment of Article 10.

The right to speedy trial therefore has not only a patent constitutional dimension which the right to speedy review lacks, the right to speedy trial is also expressly recognized and protected in the U.C.M.J. The right to speedy review does not enjoy such a privileged standing.

Of particular significance, moreover, when considering the pretrial right of speedy trial vis-a-vis the post-trial right of speedy review is the status of an accused before trial and his status after trial. In advance of trial an accused is presumed to be innocent. This presumption of innocence is perhaps the singularly most important right an accused possesses prior to and during the trial. That presumption vanishes only after he is convicted at trial. Until then he is considered innocent of wrongdoing and to require, without undue delay, the trial of a presumptively innocent person who is restrained but who is merely accused of wrongdoing, is a basic tenet of our democracy.

The caliber of the right to speedy review is not of such a fundamental dimension. Only after an accused has been convicted at trial is birth given to a right of speedy review. An accused is then no longer presumed to be innocent. On the contrary, he is in fact considered guilty, with his wrongdoing having been established during a trial proceeding, the focal point of justice for him.

Therefore, as between these two rights that bracket the trial, it is apparent that the pretrial right of speedy trial is of higher caliber than the post-trial right of speedy review and it is not surprising that judicial support for the latter right continues to be found among the criteria governing the former right. *See, e. g., United States v. Larsen, supra.*

A presumptively innocent man, confined before trial in excess of 90 days, may waive

---

2. And, if a supervisory authority action is required, he too must act within that same 90-day period. *United States v. Brewer,* 1 M.J. 233 (1975).

3. Although such a right may indeed be found to exist within the due process clause of both the Fifth and Fourteenth Amendments to our Constitution.

his *Burton* right to a speedy trial by his failure to assert this right, although before and also at trial he had an opportunity to do so. *United States v. Sloan*, 22 U.S.C.M.A. 587, 48 C.M.R. 211 (1974). *Cf. United States v. Kaufmann*, 22 U.S.C.M.A. 594, 48 C.M.R. 218 (1974). Since the right to speedy trial may be waived, there is no reason in law or sound logic why the lesser caliber *Dunlap* 90-day post-trial right to speedy review of a guilty accused, confined more than 90 days as a result of a judicially determined sentence because of his established wrongdoing, cannot also be waived by a failure to assert the right when the opportunity to do so is presented.

Evidence of record in the instant case includes a number of post-trial affidavits. Each is dated 17 October 1975. The affidavits indicate that there was more than a single reason for the 91-day post-trial delay before the convening authority took his action on 16 April 1975 while the accused remained confined. But, a primary reason for the delay was the time devoted to constructing a complete and verbatim trial record made difficult because the court reporter's tapes were of poor quality and the electronic back-up recording device had failed to function during the trial.

In his written post-trial review for the supervisory authority, the staff judge advocate discussed the 91-day post-trial delay between trial and the action of the convening authority " . . . dated 16 April 1975, [the date] having . . . been changed by pen from the originally typed date of 15 April 1975. . . ." The staff judge advocate advised the supervisory authority that " . . . the only manner in which dismissal of the charges may be avoided is through a showing by the Government of diligence under the circumstances." *United States v. Dunlap, supra.* At the conclusion of his somewhat lengthy discussion concerning speedy review, the staff judge advocate informed the supervi-

sory authority that there was no requirement to dismiss the charges in view of the post-trial diligence of the Government in overcoming the *really extraordinary circumstances* in preparing a complete trial record in the instant case.

From my examination of this 66 page trial record and its accompanying documents, I, like the majority, fail to find truly extraordinary circumstances or truly unusual factors [4] legally justifying the 91-day post-trial delay. Moreover, I find that the collective diligence contemplated by *Dunlap* to reduce delay was not exercised by those officials responsible for the preparation, authentication,[5] and processing of the record before the convening authority acted and commendably refused to sign the action he had been provided without first correcting its significantly stale date.

Therefore, purported extraordinary circumstances and post-trial Government diligence do not constitute the predicate upon which I base my conclusion.

The staff judge advocate completed and signed his post-trial review on 10 November 1975. The following day a copy of the review was served upon trial defense counsel. The supervisory authority took his action, approving the sentencing action of the convening authority, on 18 November 1975.

The service of a copy of the review upon trial defense counsel was effected pursuant to *United States v. Goode*, 23 U.S.C.M.A. 367, 370, 50 C.M.R. 1, 4, 1 M.J. 3, 6 (1975), wherein the Court stated that counsel would then have:

"  . . . an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record . . . . . The failure of counsel for the accused to take advantage

---

4. *United States v. Marshall*, 22 U.S.C.M.A. 431, 435, 47 C.M.R. 409, 413 (1973).

5. There are few ink corrections in this record, yet the trial judge had it in his possession for two weeks before he authenticated it without first requiring verification of any of its contents or retyping of any page because of inaccuracy.

of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review."

After receiving a copy of the review, counsel in this case declined to correct or challenge any matter in it and submitted no comment with respect to it before or after the supervisory authority acted seven days later. Necessarily, if counsel had not been aware earlier that his client had been confined in excess of 90 days after trial when the convening authority took his action, counsel was alerted to that fact when he read the review and its discussion of the issue of speedy review.

When the issue of speedy review is addressed and discussed in the staff judge advocate's post-trial review and the staff judge advocate expresses his view that the accused has not been denied speedy review, it is assumed that the defense position is no different than that of the staff judge advocate if the defense fails to register disagreement when provided the opportunity to do so pursuant to *United States v. Goode, supra.*

Accordingly, and not unlike the recognized defense waiver that results from a failure to timely demand relief after a violation of the constitutionally significant *Burton* speedy trial right, when an accused is continued in post-trial confinement beyond 90 days before a required action on the trial record is taken and the defense is afforded a clear and unmistakable *Goode* opportunity to demand relief, the failure to make such a demand constitutes a waiver of the *Dunlap* right to post-trial speedy review. *Cf. United States v. Sloan, supra; United States v. Kaufmann, supra.*

Certainly an authority who must act on a trial record is entitled to consider and evaluate any defense position that differs from that taken by the staff judge advocate in the staff judge advocate's written post-trial review. If no position different than that mentioned in the written review is taken by the defense, the authority who must act should then be able to properly conclude that there simply is no position of the defense that is at variance with that taken by the staff judge advocate, and that the defense is satisfied with the completeness, accuracy and fairness of the written review.

When there is such an apparent meeting of the minds between the staff judge advocate and an accused's counsel, the authority who must act on the trial record should then be able to rely exclusively upon the written review for guidance since there is nothing in conflict with it.

Orderliness of judicial process and timely, informed decision-making require nothing less. *United States v. Reed,* NCM 75 1731, 2 M.J. 1182 (N.C.M.R. 18 December 1975).

Having been given the opportunity to assert the *Dunlap* right in the instant case when *Goode* service was effected upon the accused's counsel, I consider the failure to have done so constituted a pellucid, informed and unequivocal defense waiver of the accused's judicially created *Dunlap* right.

Accordingly, I am of the opinion that the accused is entitled to no relief and that the approved findings of guilty should be affirmed and that the approved and partially suspended sentence, which includes a forfeiture of pay limited in total amount to $200.00, should also be affirmed.